United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. Before we commence our oral argument calendar, I want to officially submit four cases. They are Reza Paniagua v. Garland, Sheen v. Garland, Talley v. Kijakski, and Armstrong v. Newsom. With that accomplished, we will now hear argument in the first case, which is a Best Supplement Guide v. Newsom et al. I have a quick question for the appellees. You've got two different lawyers involved. Have you decided how to split your time? Do you know what you're going to do on that yet? Good morning, Your Honor. John Colleen for the state appellees. The state will have eight minutes. I will go first. And Mr. Nazareth, who's representing the county and city, will have seven minutes. Very well. Okay. So, Mr. Chavez-Ochoa, would you please proceed? Good morning, Your Honors. My name is Brian Chavez-Ochoa, and may it please the Court, I'd like to reserve three minutes for rebuttal. Very helpful. And I represent the appellants in this matter. Neither Rule 8 from the Federal Rules of Civil Procedure or the decision in Jacobson v. Massachusetts required the courts to adopt a heightened standard of pleading, which is what we believe took place in this particular case below. Counsel, before we get to Jacobson and the other causes of action with the exception of taking, I want to talk about mootness because, at least as I read the cases, all of your alleged causes of action are impacted by what happens in the mootness area. As you know, our BRAC case is now going en banc. So we have an unknown as to what the court will do with respect to mootness in the pandemic situation. Do you agree that, with the exception of the takings case, that the outcome of that decision will impact the remainder of your alleged causes of action?  I think the court in Wild West Institute v. Kurth, which was an EPA case, there had been a regulatory taking or a stay on any further development by the landowners because it was threatened or endangered species. The court said that, in a case that's quick and incapable or escaping review, that it's not moot because part of the issue here is the same action can be undertaken at a later date. But with respect, and I'm sure you've read the BRAC case, originally the panel seemed to agree with what you're saying. This is capable of repetition. We don't know what's going to happen and if the governor could change his mind and reimpose the shutdown. But our court, in its wisdom, has now decided to re-hear that matter. And we don't know what will happen with that. But my question was, if the BRAC on BOG panel concludes that the case is moot with respect to the injunctive relief sought, which is, I believe, everything except the takings claim, doesn't that basically moot out the balance of your case? I think it depends on to what degree that decision holds that that would impact our case. Now, other than takings, I think the contract clause would also still be subject to consideration by this court. Are you seeking damages in that? Well, your honor, in the contracts clause, cause of action, there was over 6,000 contracts that were impacted by the governor's mandates. And I think that that's something the court has to take under consideration. But that being said, I would agree with the court that, to a certain degree, BRAC is going to potentially have a decision as to our injunctive relief. But then again, I think because this action that has been complained of is subject to repetition. And I'll give you an example, your honor. Right now, of course, we have the Omicron variant. And the powers that be, including Dr. Fauci, has come out and said that the current vaccinations does not cover the Omicron variant. And then Moderna and Pfizer have both stated that they hope to have a vaccine for that variant by 2022. Let's say, I mean, as a matter of common sense, that's probably right. But we're just a court. We're not elected public officials. And we, I believe, have to defer to our elected officials to make those determinations. And what the BRAC court could say, just speculative at this point, is, yeah, we got this overall situation. But each time period, each, if you will, variant is different. And we look at it that way. So if that's what they say, doesn't that sink the balance of your claims that are not – or in you're not seeking damages? Well, as I said earlier, your honor, all I can say is this is speculative at best. It is. I don't know what the court is going to decide en banc. And if they steer the course of what's been pretty much settled law, then I think that we're still on solid ground. I think to be able to answer your question directly and succinctly, I'd have to know what the decision is in BRAC before I can address it. I understand. Well, I was – you know, we judges sometimes raise hypotheticals. I'm just trying to understand your perspective, that if they say that what has happened heretofore, including Omnicron, is now moved, my question to you is if that happened, when I said it will, we don't know what it's going to say, but if they said that, with the exception of the takings claim, which I think is the only one where you're seeking damages, doesn't that moot out this case? Well, like I said, your honor, before – A hypothetical. Okay. Hypothetically speaking, under that scenario, it could. But depending on the language in that decision could leave an open door for the court to still consider our 1983 claims. Because I don't know to what degree it's going to be all-encompassing. Now, if it says in its entirety that it's moot and that any injunctive relief is beyond the reach of a plaintiff, then certainly it could impact our case. But it would have to be all-encompassing. It would have to be overreaching to that extent for me to concede that we still might not have an open door that we could walk through and still have a valid claim. Good. So – and I don't mean to be vague, your honor, in any way, and I don't mean to be evasive in my answer to your question. It's just that I don't know to what degree the court is going to hold injunctive relief moot under these circumstances. Understood. And so – and thank you for that, because that was one of the issues that I wanted to raise was the mootness portion of the state's contention. And then also, of course, and I'd like to turn back to Jacobson, if I may, in that it was apparent from the judge's ruling that he established what we call the Jacobson claim. And under that, it would require a heightened pleading standard, which, of course, is volatile of the Rule 8 and settled law in the cases of Crawford L v. Britain, Leatherman v. Tarrant County narcotics. And I know I'm going to mispronounce his case name, but Swierczewicz v. Surima. And then we have Johnson v. City of Shelby and Bell Atlantic Corp v. Trombley or Tombley. All of those cases held that where there is a heightened pleading standard applied, it was inappropriate. Now, I'm not saying – Counsel, what is the difference, if any, between the Jacobson test and rational basis review, any substantive difference? At least one Supreme Court justice suggested the Jacobson test is essentially a rational basis review. I couldn't understand that in your brief, what the real difference is between the two. Well, I think the – I mean, I agree that the Jacobson ruling is – it has to bear a rational relationship to the action being taken. In other words, it has to have some nexus to it. I think in this case, however, in the instant matter, I think you have to look at not what the facts were in particular, but whether or not we were able to state – put it simply, whether we were able to give the state notice of what we were seeking and what the claims were. And I think under Rule 8, we were able to do that. Now, the court applied, at least we contend, a different standard to that. And he – the court below articulated the elements that must be met. And quite frankly, those elements rise to the level of a heightened pleading standard. And under the contention that we argue before you is it would be impossible under his pleading standard to state a claim in any sense or under any circumstances, which certainly flies in the face of Rule 8. And the courts have been very bold to state that any changes to the federal rules have to be made by Congress and not by the district court and certainly not by the defendants. So I think that's what the court has to take into consideration, was the decision that was made below, did that equate to a heightened pleading standard? And if it does, then it has to be sent back with directions to the court. Now – Let me ask you this. The – when you look at the Supreme Court's Roman Catholic Diocese case where there was mention, of course, of Jacobson – Right. The teaching seemed to be that – you know, that's an old case, decided many, many years ago, I think 1905. They didn't really use the standards of review like we do now. But in that case, it was very clear that the free exercise clause of the Constitution was being impaired and impinged by the court's previous understanding of Jacobson. And in that case, you did have heightened scrutiny because a constitutional right was being impaired. If you read it that way, how – what constitutional right do you believe most, if you will, resembles in importance the free exercise right that was found in the Roman Catholic Diocese case? You've alleged all kinds of constitutional claims. Which of those do you think bears the closest resemblance in terms of importance, if you will, to the free exercise clause that was important to the court in the Roman Catholic Diocese case? And, Your Honor, my answer will be brief because I see I'm almost out of time. I'm reserved for rebuttal. But I think, Your Honor, quite frankly, it's our First Amendment claim. Whether you're in a gym or you're on the street, that's not to suggest that it doesn't protect the same liberties that we have in our First Amendment rights. I know it's been contended that a gym has – you have no right to First Amendment speech in a gym. But it's still – it's a public meeting place, Your Honor. And I don't know that you can distinguish it from public fora or from the sidewalk. I mean sidewalks have long been protected for free speech. And so I don't know that that would be reflected any differently in a gym where individuals are gathering and talking about politics and the events of today as if you were on the sidewalk outside of the gym. And also – You want to save the balance of your time, you said? Please, Your Honor. Very well. All right. So let's hear – I guess first we're going to hear from the Attorney General's office, right? Is that correct? Yes, Your Honor. Good morning. May it please the Court. John Killeen for the state appellees. Again, I will have eight minutes and Mr. Nazareth will have seven minutes for the county and city. So, Your Honor, the plaintiffs have brought only declaratory and injunctive relief claims against the state. The takings claim was asserted only against the city and county defendants. We believe that the Brock on Bonk opinion is likely to be relevant to the mootness analysis here. Whether that means that the court stay this case until Brock is decided or something else, that's up to the court. But it probably would not be the best use of the court's time to grind through the mootness analysis since Brock likely will weigh on it. I'm prepared to argue mootness today, but I think we agree with Judge Smith, your instinct that the Brock on Bonk opinion will be relevant here. Let me ask you this. I know you want to move on from this, but I have this question. The pandemic, of course, is a moving creature, if you will. Since the state filed its brief, according to my law clerk's calculation, 5,684 people have died in California and Austria and particularly in Vienna, which is a I'd like to think a very civilized democracy. They're on lockdown again. They didn't have that a while ago. Parts of Germany are again in lockdown. Why isn't it perfectly reasonable to assume that Governor Newsom, if it were so advised by his health advisors based on a new variant of some kind, would reimpose a lockdown? Sure, Your Honor. Your Honor, the fundamental policy shift from the state's perspective occurred earlier this year when we transitioned from a non pharmaceutical regime to a pharmaceutical regime. You know, when when tandem with Roman Catholic Diocese, when South Bay was moving their way through the courts, the only tools California had to combat the pandemic were non pharmaceutical methods like capacity restrictions, masks, social distancing. Once the vaccines came into the system, the antiviral pills, the antibody treatments and the other pharmaceutical treatments, that that was the game changer. And since then, California has been consistent in not needing to rely on the same sort of wide ranging lockdowns that it used at the beginning of the pandemic. And I understand that. But that was also they have vaccines in in Austria as well. Are you prepared to represent on behalf of the state that the state will not, under any circumstances, reimpose a lockdown during this pandemic? Your Honor. Yes. As long as we remain within the vaccine regime, so long as our pharmaceutical treatments are working, the state of California will not need to reimpose the same sort of capacity restrictions that were imposed at the beginning of the pandemic. And your Honor, I think even this year shows that to be true. So as soon as the vaccines began to work early this year, the state rolled down the rolled back the orders that are at issue in this case. The state did not reimpose any capacity restrictions, even as the Delta variant was surging through during the summer. And the state has not announced or is planning any capacity restrictions in response to the current variant. Just last week, on December 1st, in a news conference, there's a Politico article out there that references this. Governor Newsom said that the state did not anticipate using the same sort of capacity restrictions in response to the Omicron variant. How are we supposed to analyze that? I mean, we take it all in good faith. But are we supposed to have some kind of a percentage of likelihood of a reimposition based upon some new variant thing? Or do we just defer wholesale to our elected officials? So, Your Honor, this brings us back to Brock. The standard is, you know, the standard is whether there is a reasonable expectation of reenactment of the order being reenacted. In 2019, this court in Glazing Health said that the burden was on the party opposing mootness to show that there was a reasonable expectation of reenactment. Brock, the panel took a different view. That is what the en banc court will be deciding. What is the standard? Where does the burden rest for purposes of voluntary cessation? But the black letter law is, is there a reasonable expectation of reenactment? And so long as we remain within the vaccine regime, there is not a reasonable expectation that these sort of widespread business closures will be needed in California. Thank you. Given the efficacy of vaccines or assuming that, does that mean that a lockdown would would not pass rational basis review? Your Honor, I and I, it would depend on what what lockdown meant. You know, there are lockdowns throughout the world have taken various forms. There have been the harder versions in Italy or Austria or Australia. California was never anywhere close to that level. So how about the one at issue here? Lockdown of closing down of gyms, for example, with that past rational basis review now, now that we have vaccines. Your Honor. Your Honor, it would be a different calculation, to be honest. We haven't briefed us, and I don't believe any court has looked at it. But certainly the availability of the pharmaceutical treatments would be a factor that was not a factor when California was making these decisions in the spring of 2020. Your Honor, just to briefly address the merits in terms of Jacobson, the district court here dismissed the complaint under traditional rational basis review. Alternatively, it dismissed the complaint under the so-called Jacobson standard. But the court, even if that were wrong, the court can affirm the judgment based on traditional rational basis review. And in fact, on appeal, the plaintiffs have not even argued that California's restrictions on gyms did not survive rational basis scrutiny in the spring of 2020. So the complaint can be affirmed on that basis alone. In terms of the First Amendment claim, this was a regulation of conduct, not of speech. Restrictions are subject to First Amendment scrutiny only when conduct with a significant expressive element drew the legal remedy. And the ordinance has the inevitable effect of singling out those engaged in expressive activity. That's the standard from International Franchise Association and the HomeAway.com case. These ordinances on their face did not target expression at all. And gyms were certainly not singled out because of their expression. They were regulated because they were places where people from different households gathered together and exercised and breathed heavily. I'll now turn over the rest of the presentation to Mr. Nazareth, Your Honor. Very well. Mr. Nilerith? Good morning, and may it please the Court. My name is Matt Nazareth of Myers-Navet, and I represent the County of San Joaquin and City of Lodi Appellees. The District Court's judgment should be affirmed in full for all the reasons stated therein and as discussed in our brief. But this morning, I'd like to focus on just one issue, which is that none of Best Supplements' fundamental rights are implicated by the public health orders they've challenged. This goes to Judge Smith's question regarding Roman Catholic and what the right at issue that's most similar to a free exercise claim is. And the answer is there really isn't one here. And as Best Supplements' civil rights claims are all subject to nothing more than rational basis review, because of that, the public health orders easily survive. Best Supplements has cited both the right to pursue a common calling and the right to free speech as fundamental rights at issue, but neither of these trigger strict scrutiny here. First, this Court was correct when it held in Slidewaters v. Washington that pursuit of a common calling is not a fundamental right for purposes of a due process claim. And the same is true for purposes of an equal protection claim. Second, Best Supplements' attempt to plead some protected First Amendment activity is unavailing, as the public health orders here regulate economic activity and are not targeted at speech or expressive conduct. Counsel, I respect you're going through the marathon. I just want one little question. Since the Hakings claim involves damages, I gather that whatever Brock decides, the mootness question would not bear on that particular alleged cause of action. I'm not saying the cause of action flies. I'm just saying if, as a, if you will, as a standalone question, if one were to plead a plausible Hakings claim, that would survive a mootness issue, would it not? I agree with that, Your Honor. Okay. So before I dig into those two points, I think it's important to keep in mind the context of what's at issue today. The county issued a limited restriction on Best Supplements' business in March of 2020, which allowed Best Supplement to continue operating remote services and retail while temporarily prohibiting in-person exercise. Since July of 2020, Best Supplement has been allowed to offer in-person outdoor exercise services. And for 10 months now, since February of this year, Best Supplement has been able to operate without any county restrictions. So I'd like to first address the common calling issue, as Best Supplement cited several cases for the first time in their reply brief. As an initial matter, I think this court's decision in Slidewaters is the most direct precedent on this issue. There, this court held that the right to pursue a common calling is not a fundamental right for purposes of a business's due process challenge to COVID-19 public health orders. Best Supplement didn't attempt to distinguish Slidewaters, nor could they. Instead, they could simply assert that it was wrongly decided and in conflict with Supreme Court precedent. But each of the cases they cited, and this is in their reply of pages 10 and 11, stands only for the proposition that the right to pursue a common calling is a fundamental to the Privileges and Immunities Clause. And not one of them found that's a fundamental right for purposes of the Equal Protection or Due Process Clause. Both this court and the Supreme Court have recognized that distinction. In fact, in one of the Supreme Court cases cited by Best Supplement, this is Supreme Court of New Hampshire v. Piper, 470 U.S. 274, the Supreme Court at footnote 14 noted that the standards for Privileges and Immunities Claim are different than an Equal Protection Claim. And I think this distinction is made abundantly clear in the Ninth Circuit decision, Mary Lee v. Bonham. There, there were commercial fishermen, out-of-state commercial fishermen challenged fees that were higher on out-of-state fishermen versus in-state fishermen under the Privileges and Immunities Clause and under the Equal Protection Clause. There, the court held that while the right to pursue a common calling was fundamental for purposes of the Privileges and Immunities Clause, it was not fundamental for the purposes of the Equal Protection Claim. And therefore, the Equal Protection Claim was subject only to rational basis review. Accordingly, regardless of whether the public health orders at issue impact Best Supplement's right to pursue their common calling, the constitutional claims are subject only to rational basis review. As Mr. Colleen noted, the District Court found that the public health orders survive rational basis review, and Best Supplement has not challenged that ruling on appeal. Therefore, Best Supplement has waived any argument, and if this court finds that rational basis review does apply, that ends the inquiry. I'd also like to briefly address the First Amendment protected activity issues, and I think Mr. Colleen's already addressed this, but just to emphasize a couple points to your arms. This court made clear in International Franchise Association v. Seattle that business relationships and activity are conduct, not speech, and do not have a significant expressive element that would first trigger First Amendment protections. Best Supplement's argument that fitness instructors giving lessons rises to the level of First Amendment expressive activity is exactly the type of absurd result that Justice O'Connor rejected in her concurrence in Arcara v. Cloud Books, explaining that government action that only has incidental effects on speech does not trigger analysis under the First Amendment. This court's recent decision in American Society of Journalists v. Bonta underscores this point, where the court explained that because applicability of the ordinance does not turn on what workers say, but rather on the service they provide or the occupation in which they are engaged, end quote, the First Amendment protected rights are not triggered. Because Best Supplement has not shown that the public health orders implicated any of their fundamental rights, all of their civil rights claims are subject to, at most, rational basis review. And with that, thank you, Your Honors. Very well. I appreciate your keeping to the time. All right, so we're back to Mr. Chavez Ochoa. You have some remaining time to respond. Thank you very much, Your Honors. Just addressing Sidewaters briefly, we had addressed it in our brief, and I'll rely on those cases that we've cited, that would distinguish the findings and the ruling in Sidewaters. But more importantly, going back to the Roman Catholic case and some of the other church cases as I would refer to them as, it's clear that the mandates and the orders that were sent down did, in fact, restrict and limit free speech. And I guess what this court has to decide is speech that's spoken in a place of worship to be distinguished from speech that's spoken in a public forum or on the sidewalk. I think it's important to note that free speech, of course, there's freedom of religion, but the free speech portion, I think, has been proven, not only in our complaint, but addressed in our briefs. Now, moving back to Brock, as I said earlier, to what degree it would impact this case, we don't know yet. But the reasonable expectation of reenactment, if we're to believe, because Mr. Killeen's argument was based on antivirals that may or may not be available, a vaccine that may or may not cover this new, the Omicron variant or any variant that comes along in the next year or so, certainly does not take us outside of the scope. Mr. Chavez, do you agree, on behalf of the appellants, that this court should refrain from handing down any decision until the Brock-Enbach decision is released? Well, certainly, I can't argue with that possible outcome of today's hearing, because at least that would give this panel some idea of what Brock has decided. It's just following, in a way, what you said. You need to look at the actual language of Brock, whatever it says, to determine what happens. And like you, we don't know what's going to happen, so doesn't it make sense that we would hold our hand, if you will, stay our hand on anything here until that decision has been handed down? Your Honor, I can't argue with that analysis. I think that probably is the crux of why we're here this morning, that we're holding in a holding pattern until we know what that decision states. That would also be true, even though the takings claim against the county and city would not be impacted by the mootness issue. That's correct. I guess you're over time. No, I'm out of time, Your Honor. Well, thanks to all counsel. Let me ask my colleagues whether either has additional questions. Very interesting questions, very interesting case. We appreciate it. The case just argued is submitted, and we wish all counsel a good day. Thank you very much, Your Honors.
judges: SMITH, LEE, FORREST